El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
Mediante el recurso ante este Tribunal se solicita la re-visión de una orden de archivo de una queja contra un miembro de la Rama Judicial. Como consecuencia, se cues-tiona la facultad de este Tribunal para atender el reclamo de los quejosos. Ello obliga a expresarnos con relación a la potestad que posee este Tribunal para revisar el archivo de una queja confirmada por el Juez Presidente o la Jueza Presidenta.
A tenor con las facultades conferidas por la Constitución de Puerto Rico y las disposiciones de las Reglas de Disci-plina Judicial, infra, resolvemos que un quejoso tiene ac-ceso a solicitar que este Tribunal revise una determinación de archivo de una queja contra un miembro de la Judica-tura.
I
El Sr. Fidel Alonso Vals, el Sr. Guillermo Nigaglioni y el Instituto de Banca y Comercio, Inc. (quejosos) presentaron una queja contra la Hon. Iris L. Cancio González (jueza Cancio González) por alegadas violaciones a los Cánones de Etica Judicial. Sostienen en la queja que la jueza Cancio González se negó a acatar un mandato de este Tribunal, por lo que alegan que este proceder confirma su prejuicio y parcialidad en contra de los comparecientes.(1) Aducen que la jueza Cancio González no permitió que se presentara una reconvención por prescripción a pesar de que esta Curia determinó que esta procedía y que la acción por dolo no estaba prescrita.(2) A su vez, señalaron que la jueza Cancio *294 González tampoco permitió a uno de los abogados de los quejosos terminar su argumentación en el caso. De igual forma, señalaron que ésta denegó una solicitud de prórroga y que impuso $500 de sanción por el incumplimiento de su orden. Sostienen que la negativa de la jueza Cancio Gon-zález a acatar lo resuelto por el Tribunal Supremo refleja que está actuando con pasión, prejuicio y parcialidad. Pos-teriormente, los quejosos suplementaron la queja presentada a los fines de alegar que la jueza Cancio González tenía una relación de parentesco por afinidad con la hermana de uno de los representantes legales de la parte contraria a los quejosos. Además, cuestionaron la descalificación de abogados realizada por la jueza Cancio González, las sanciones impuestas y que permitiera la representación legal de la otra parte, a pesar de que entienden que existe un conflicto de intereses.
La queja presentada se tramitó conforme a las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B. La Directora de la Oficina de Administración de los Tribunales desestimó la queja presentada. Al así hacerlo, adujo que la determi-nación que la jueza hiciera sobre la descalificación de los abogados y la imposición de sanciones no está comprendida dentro del ámbito de los procesos disciplinarios. Estas de-ben ser evaluadas como determinaciones judiciales para las cuales existen los procesos apelativos correspondientes. Por otra parte, la Directora de la Oficina de Administra-ción de los Tribunales determinó que las expresiones de la jueza Cancio González durante los procesos demuestran que concedió una oportunidad amplia al representante legal de los quejosos y empleó un tono adecuado y *295 respetuoso. Con respecto a la alegación de afinidad, se con-cluyó que no existe parentesco dentro del cuarto grado de consanguinidad y que no existe ninguna evidencia que pu-siera en entredicho su capacidad para ser impartial.
Inconformes con la decisión, los quejosos instaron opor-tunamente una solicitud de reconsideración ante la Oficina de Administración de los Tribunales. Adujeron que la jueza Cancio González desobedeció el mandato de este Tribunal, según razonó el Tribunal de Apelaciones.
El 26 de febrero de 2013, la Directora de la Oficina de Administración de los Tribunales reiteró que no existía evi-dencia de que la jueza Cancio González actuara movida por inclinaciones u opiniones personales. Entendió que esta erró al no atenerse al mandato del Tribunal Supremo. Sin embargo, expresó que ello no equivale a actuar en menos-precio de la ley. Además, señaló que tampoco existe prueba de que el error cometido constituyó un abuso intencional de la discreción judicial ni que es reflejo de una conducta impropia o de favoritismo hacia algún litigante o abogado.
Ante tal conclusión, los quejosos solicitaron la revisión ante el Juez Presidente del Tribunal Supremo conforme la Regla 9 de Disciplina Judicial, 4 LPRA Ap. XV-B. Los que-josos plantearon que la negativa de la jueza Cancio Gonzá-lez a acatar el mandato de este Tribunal constituye una violación ética por ser una conducta negligente o por me-nospreciar la ley. Posteriormente, suplementaron su solici-tud de revisión para aducir que la jueza Cancio González ha presentado una conducta parcializada en contra de uno de los representantes legales.
La solicitud de revisión ante el Juez Presidente fue atendida por la Jueza Asociada Señora Fiol Matta me-diante una Resolución de 17 de junio de 2013.(3) Tras examinar la queja presentada y el expediente, la Jueza Aso-ciada Señora Fiol Matta concluyó que “no existe evidencia suficiente para iniciar un procedimiento [...]”. Apéndice del *296 Recurso de certiorari, pág. 300. En cuanto al parentesco alegado por los quejosos, la Jueza Asociada Señora Fiol Matta señaló que no está dentro del cuarto grado de con-sanguinidad o afinidad y que tampoco existe prueba sobre vínculo alguno que ponga en entredicho la capacidad de imparcialidad. Con relación a los demás señalamientos, re-saltó que, en su mayoría, la queja se refiere a “determina-ciones judiciales tomadas por la jueza durante el trámite del caso”, id., las cuales están excluidas del proceso disciplinario. Citó la consabida norma de que para que es-tas actuaciones constituyan una violación ética que justifi-que la destitución de un juez se debe demostrar que existió un abuso intencional de discreción o que el error es de tal magnitud que expuso un claro favoritismo o conducta im-propia hacia una parte. Así, la Jueza Asociada Señora Fiol Matta determinó que la “actuación de la jueza al desesti-mar la reconvención constituyó una interpretación del de-recho revocada por el Tribunal de Apelaciones”. Id., pág. 304. Expresó además que no existe evidencia que denote un abuso intencional de la discreción de la jueza, por lo que sus actuaciones no constituyen una violación ética que amerite el inicio de un procedimiento disciplinario en su contra.
En desacuerdo con tal proceder, los quejosos presenta-ron el recurso ante nuestra consideración. Señalaron que la Jueza Asociada Señora Fiol Matta erró al determinar que la conducta de la jueza Cancio González constituye un error de juicio o de derecho que está dentro de su facultad judicial. Los quejosos sostienen que lo actuado por la jueza Cancio González constituye un claro desacato al mandato expreso del Tribunal Supremo sobre la fecha cuando co-menzó a transcurrir el término prescriptivo. Así, nos soli-citan que ordenemos el inicio del procedimiento disciplina-rio contra la jueza Cancio González.
Con el beneficio de la comparecencia de la jueza Cancio González y de la Oficina de la Administración de los Tribu- *297 nales, procedemos a atender el asunto ante nuestra consideración.
II
A. Antes de entrar en los méritos del error señalado es necesario disponer de un asunto medular en cuanto a la jurisdicción de este Tribunal. Ese asunto se trajo a nuestra atención por la jueza Cancio González en su compare-cencia.
La jueza Cancio González cuestiona el que se presente un recurso de certiorari para revisar la determinación en reconsideración realizada por la Jueza Asociada Señora Fiol Matta. A estos efectos, sostiene que el recurso de cer-tiorari procede para que un tribunal superior revise un asunto atendido por un tribunal inferior. Por lo tanto, en-tiende que ese recurso no está disponible para atender los reclamos ante nuestra consideración. De igual forma, alude que las Reglas de Disciplina Judicial tampoco reco-nocen la presentación de un certiorari para revisar la de-terminación de archivo de una queja contra un juez. Por ende, alega que al no solicitarse la revisión de sentencias o resoluciones de foros inferiores, el recurso no procede en derecho y debe ser desestimado. No le asiste la razón. Veamos.
B. Como es sabido, el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que estos sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema Judicial. In re Claverol Siaca, 175 DPR 177, 188 (2009). De esta forma se preserva “[l]a independencia judicial, la administración efectiva e imparcial de la justicia y la confianza de la ciudadanía en un sistema de justicia”, lo que contribuye a afianzar y a consolidar las bases demo- *298 oráticas de nuestra sociedad. 4 LPRA Ap. IV-B I. A fin de cuentas, es la confianza de los ciudadanos lo realmente esencial para el funcionamiento y la efectividad de los tribunales, porque el respeto que la gente le tenga a las ins-tituciones judiciales es lo que brinda a éstas fuerza y autoridad. Lozada Sánchez et al. v. JCA, 184 DPR 898, 990 (2012). Cónsono con ello, hoy la facultad para destituir los jueces que integran nuestro Sistema Judicial recae sobre este Tribunal. Esta facultad debe ser ejercitada siempre con gran celo.
En origen, el poder de destituir por causa justificada a los jueces recaía en el Gobernador. Los contornos para la destitución estuvieron delineados por un debido proceso de ley que reconocía a los jueces el derecho a ser notificados y a poder defenderse antes de ser destituidos. Jiménez v. Reily, 30 DPR 626 (1922). Luego se delimitaron estatutariamente las razones por las cuales se podría destituir a un juez y, aunque el Gobernador ostentaba esa prerrogativa, se reconoció que debía hacerlo por recomendación de este Tribunal.(4) Véanse: In re Navarro Ortiz, 60 DPR 485, 487 (1942); L.M. Negrón Portillo, Ética y disciplina judicial en Puerto Rico, (ed. del autor), 1987, pág. 13. No fue hasta la aprobación de la Ley Núm. 432 de 15 de mayo de 1950, Ley Orgánica de la Judicatura de Puerto Rico, que se inició la estructuración del sistema judicial en Puerto Rico. En lo que nos concierne, el Art. 40 de la referida Ley Núm. 432 (1950 Leyes de Puerto Rico 1147) proveía el procedimiento que realizaría el Gobernador para la destitución de los jue-ces de distrito, siempre y cuando este Tribunal así lo recomendaba, conforme con el procedimiento establecido en la *299 Ley Núm. 58 de 29 de abril de 1930. Véase 4 LPRA sec. 25n n.
A pesar de ello, con el avance e impacto que conllevó la aprobación de nuestra Constitución en el 1952, se estructuró una reforma judicial de avanzada.(5) En lo pertinente, la Sec. 11 del Art. V de la Constitución de Puerto Rico, LPRA, Tomo 1, ed. 2008, pág. 418, dispone:
Los jueces del Tribunal Supremo podrán ser destituidos por las causas y mediante el procedimiento que esta Constitución establece en la Sección 21 del Artículo III. Los jueces de los demás tribunales podrán ser destituidos nor el Tribunal Supremo por las causas y mediante el procedimiento que se dis-ponga por ley. (Enfasis suplido y subrayado nuestro).
Como consecuencia, la transcrita disposición constitucional confirió a este Tribunal el poder absoluto de destituir los jueces de los “demás tribunales”. íd. Ello constituyó un cambio radical a la facultad reconocida al Gobernador para la destitución de los jueces con la recomendación de este Tribunal. El procedimiento de destitución de jueces se convirtió en estrictamente judicial. Véase Negrón Portillo, op. cit., pág. 17.
Ahora bien, las razones y el procedimiento para la des-titución de los jueces se encomendaron a la Rama Legislativa. Como consecuencia de tal deber, la Asamblea Legislativa aprobó la Ley de la Judicatura del Estado Li-bre Asociado de Puerto Rico, Ley Núm. 11 de 24 de julio de 1952 (4 LPRA ant. sec. 1 et seq). Mediante la See. 24 de esta ley, 4 LPRA ant. see. 232, se establecieron unas pautas generales del procedimiento a seguir. Específicamente, esta sección disponía el procedimiento para la destitución de los jueces de la forma siguiente:
Cualesquiera cargos que se formularen contra cualquier juez del Tribunal de Primera Instancia serán presentados *300 ante el Director Administrativo de la Oficina de Administración de los Tribunales, quien informará de ello al Juez Presidente, y si el Tribunal Supremo así lo desea, recomendará la acción ulterior a tomarse o el archivo de los cargos. El Tribunal Supremo ordenará que se practique la investigación que creyere conveniente y podrá solicitar del Secretario de Justicia que practique tal investigación y rinda un informe al Tribunal.
Si el Tribunal Supremo determinare que existe causa para ulteriores procedimientos, podrá solicitar del Secretario de Justicia o de cualquier funcionario del Tribunal que radique la correspondiente querella. El Secretario de Justicia también, a iniciativa propia, o por orden del Gobernador, podrá iniciar el procedimiento para la destitución de un juez y entonces ac-tuará como querellante. El procedimiento se iniciará mediante querella dirigida al Tribunal Supremo imputándole al juez conducta inmoral o negligencia en sus deberes judiciales. El Tribunal dará a las partes la oportunidad de ser oídas, en unión a sus testigos y el Tribunal podrá en su discreción mien-tras se sustancia el procedimiento suspender al Juez de em-pleo y sueldo. Si el Tribunal considerare que los cargos, o parte de ellos, han sido probados, podrá censurar o suspender al juez querellado, o destituirlo permanentemente de su cargo, según bajo las circunstancias concurrentes, creyere que sea la pena más adecuada.
Los jueces del Tribunal Supremo podrán ser destituidos so-lamente mediante el procedimiento de residencia establecido por la Constitución del Estado Libre Asociado. (Enfasis suplido). 1952 Leyes de Puerto Rico (Sesiones Extraordina-rias) 51 y 53.
La Sec. 24 de la Ley Núm. 11, supra, fue objeto de varias enmiendas.(6) Destacamos particularmente que la Ley Núm. 4 de 22 de abril de 1966 dispuso que le correspondía al cuerpo del Tribunal Supremo ordenar el archivo de los cargos que se presentan para la destitución de un juez. La Ley Núm. 201 de 23 de julio de 1974 introdujo la última enmienda a la See. 24 de la Ley Núm. 11, supra. Mediante esta, la See. 24 estableció un procedimiento en el cual se formulaban los cargos ante el Director Administrativo de la Oficina de Administración de los Tribunales, quien in- *301 formaba a este Tribunal. Entonces, esta Curia ordenaba el archivo de los cargos o la investigación correspondiente. A su vez, el Tribunal estaba facultado para iniciar una vista informal o administrativa a los fines pertinentes. Luego de realizada la investigación, el Tribunal designaba a uno de sus jueces para la determinación de causa. Este tenía la facultad de suspender al juez de empleo y sueldo, y de tomar las medidas que entendiese meritorias. (7) Si se determinaba causa, el Tribunal solicitaba que se presentara la correspondiente querella o solicitud de separación, brindaba la oportunidad de escuchar a las partes y procedía a tomar la medida que considerara apropiada.
Además de la See. 24 de la Ley Núm. 11, supra, según enmendada, la Regla 13 del Reglamento del Tribunal Supremo, aprobada el 23 de mayo de 1975 (4 LPRA ant. Ap. I-A), establecía un proceso con relación a las quejas y los procedimientos disciplinarios contra abogados y jueces del Tribunal de Primera Instancia. En lo pertinente al proceso disciplinario contra jueces, resalta que el Secretario anota-ría en el registro especial correspondiente las quejas escri-tas y bajo juramento contra un juez y luego se elevaría “a la consideración del Tribunal en Pleno, por conducto del Juez Presidente”. (Énfasis suplido). Regla 13(b) del Reglamento del Tribunal Supremo, 4 LPRA Ap. I-A (ed. 1978).(8) Ahora bien, la Regla 13 disponía que correspondía al Tribunal archivar y sobreseer la queja o tramitarla. Si se or-denaba tramitar la queja, luego de recibir la correspon-diente contestación, el Tribunal podía ordenar al Procurador General que presentara la querella o solicitud *302 de separación. Luego de celebrado el proceso correspon-diente, el cual incluía la notificación, la celebración de vista, la confrontación de testigos, el examen del informe en los casos remitidos a un Comisionado Especial y las objeciones a este, el Tribunal resolvía lo que procedía en derecho.
Además, en el 1975 este Tribunal adoptó las Reglas para el Trámite de Reunión Informal o de Separación del Servicio de Jueces (4 LPRA ant. Ap. XV), que regirían el procedimiento administrativo en los casos de solicitud de separación de servicios contra jueces. En estos casos, este Tribunal decidía si sometía la solicitud de separación a un trámite de reunión informal. Durante ese trámite se desig-naba a un oidor ante quien se llevaba a cabo una reunión.(9) Luego de celebrada la reunión, el oidor preparaba un informe a este Tribunal con sus recomendaciones para que este Foro emitiera la resolución que atendiera el asunto.(10) La Resolución podía ordenar el archivo de la solicitud de separación del servicio, la investigación conveniente o el procedimiento formal.
En 1981 surge por primera vez el planteamiento de la necesidad de enmendar la See. 24 de la Ley Núm. 11, supra, con el fin de aprobar un reglamento que atendiera exclusivamente los procedimientos disciplinarios y de se-paración del servicio de los jueces. Es importante destacar que para la etapa de investigación se aconsejó que se rindiera el informe de investigación a este Tribunal para que se procediera con una determinación de causa por uno de los Jueces Asociados. Si la determinación es negativa, el Pleno ordenaría el archivo y sobreseimiento de la solicitud, quedando así terminado el incidente. Véase Secretariado de la Conferencia Judicial, La Judicatura puertorriqueña, *303 octubre de 1981, págs. 220-221.(11) A tenor de ello se propuso un reglamento que fue discutido ampliamente en la Octava Sesión Plenaria de la Conferencia Judicial celebrada de 1981.
El trabajo realizado en 1981 se analizó y sirvió de base para que en el 1984 se presentara un proyecto de reglamento. Posteriormente, en el 1988 se retomó la discusión en la Conferencia Judicial en torno al tema de la separación de los jueces. Ello dio lugar a que en el 1989 se discutiera el Borrador de Reglamento para atender el procedimiento disciplinario y la separación de servicio, preparado por la Conferencia Judicial. Véase Secretariado de la Conferencia Judicial, La independencia judicial en Puerto Rico, 1988; Borrador de Reglamento para atender el Procedimiento Disciplinario y la Separación del Servicio Tribunal Supremo de Puerto Rico, Conferencia Judicial de 1989.
Posteriormente, con la aprobación de la Ley Núm. 64-1992 se delegó en este Tribunal la aprobación de las reglas de procedimiento para el trámite de destitución y separa-ción de jueces. Como resultado, el 25 de septiembre de 1992 este Tribunal, luego de que ponderó el balance de intereses que debía existir en el trámite de quejas y de solicitudes de separación contra jueces y las recomendacio-nes recibidas en las Conferencias Judiciales de 1981, 1988 y 1989, derogó el Trámite de Reunión Informal o de Separación del Servicio de Jueces aprobado en el 1975 y enmendó la Regla 13 del Tribunal Supremo, supra. Además, aprobó las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico (Reglas de Procedimiento de Acciones Disciplinarias), R. Proc. por Salud Jueces T.P.I y *304 T.A., 131 DPR 630 (1992). Véase, además, In re Enmdas. Rs. Proc. Salud T.P.I. y T.A., 154 DPR 643 (2001).
Oportunamente, este Tribunal nombró un Comité para revisar las Reglas de Procedimiento de Acciones Disciplinarias. Entretanto, se aprobó la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24 et seq). En esta expresa-mente se expusieron las medidas disciplinarias que se im-pondrían a los jueces por incurrir en violaciones a la ley, a los Cánones de Etica Judicial y a los cánones del Código de Etica Profesional, la reglamentación administrativa apli-cable, o la medida que se impondría cuando el juez manifestara negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales. 4 LPRA sec. 25i. De igual forma, la Ley Núm. 201, supra, dispuso las medidas disciplinarias a imponerse, entre las cuales destaca la destitución del cargo. 4 LPRA sec. 25j. A su vez, la nueva ley de la Judicatura estableció expresamente que el procedimiento disciplinario y de separación de servicio se regiría por lo dispuesto en las reglas que aprobara este Tribunal. 4 LPRA sec. 25n.
Para julio de 2004 se rindió el informe correspondiente a las reglas de disciplina judicial en la Vigésimo Tercera Conferencia Judicial. Finalmente, el 8 de marzo de 2005 se aprobaron las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, y se derogaron las Reglas de Procedimiento de Acciones Disciplinarias. Mediante estas nuevas reglas se aprobó un proceso disciplinario que garantiza a la ciudadanía y a la Judicatura la justa y pronta consideración de todo asunto presentado y el debido proceso de ley. Regla 2 de Disciplina Judicial, 4 LPRA Ap. XV-B.
De acuerdo con las Reglas de Disciplina Judicial, el pro-ceso disciplinario contra un juez se inicia con la presenta-ción de una queja juramentada ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales. Regla 5 de Disciplina Judicial, 4 LPRA Ap. XV-B. Esta es *305 evaluada inicialmente para corroborar si cumple con los requisitos de forma. De ser ello así, se informa al Director Administrativo de los Tribunales, quien determinará si procede que la Oficina de Asuntos Legales o la persona que se designe inicie la investigación. Si no procede la investi-gación, se notifica la determinación de archivo de la queja al juez promovido y al promovente con copia, de manera que este último, de entenderlo necesario, solicite una reconsideración. De no solicitarla en el término prescrito, la determinación advendrá final. Regla 6 de Disciplina Judicial, 4 LPRAAp. XV-B.
Ahora bien, si la investigación procede se rinde un informe. Si este informe no expone una conducta que ame-rite una acción disciplinaria, el Director Administrativo de los Tribunales desestimará la queja, ordenará su archivo y notificará al juez y a la parte promovente. El promovente podrá solicitar una reconsideración ante el Director Admi-nistrativo de los Tribunales. De no solicitarse la reconside-ración, la determinación de archivar será final. Regla 8(c) y (d) de Disciplina Judicial, 4 LPRAAp. XV-B.
Cuando el Director Administrativo de los Tribunales sostenga su determinación inicial sobre archivo de la queja, el promovente puede presentar una solicitud de re-visión “ante el Juez Presidente o la Jueza Presidenta”, quien podrá confirmar, revocar o devolver el expediente para que se amplíe la investigación. Regla 9 de Disciplina Judicial, supra.(12)
Una vez culmina esta etapa del proceso, si el Juez Pre-sidente confirma el archivo de la queja determinado por el Director Administrativo de los Tribunales, nuestras Reglas de Disciplina Judicial no contemplan expresamente el ca-rácter final de la decisión de archivar. En ese sentido, no existe un mecanismo que provea acceso al Pleno de este *306 Tribunal a una parte que no está conforme con esa determinación. Ello a pesar de lo enunciado expresamente en la Sec. 11 del Art. V de la Constitución de Puerto Rico, que faculta a este Tribunal a intervenir en las etapas que pudieran conllevar la destitución de jueces por las causas y mediante el procedimiento que se disponga por ley.
El recuento histórico expuesto refleja la participación activa de todos los componentes de esta Curia durante todas las etapas del proceso. Toda queja juramentada se elevaba a la consideración del Tribunal en Pleno por conducto del Juez Presidente, y le correspondía a esta Curia archivar y sobreseer la queja o tramitarla.(13)
A pesar de lo anterior, desde que se aprobaron las Reglas de Procedimiento de Acciones Disciplinarias en el 1992 hasta las Reglas de Disciplina Judicial en el 2005 no se dispuso de un sistema para que todos los miembros de este Alto Foro intervinieran en la revisión de una determinación de archivo de una queja. Ello, contrario a las recomendaciones realizadas observando las normas constitucionales discutidas. Véase Secretariado de la Conferencia Judicial, La Judicatura puertorriqueña, op. cit. Nótese que ese proceso de revisión de sobreseimiento se limita al escrutinio del Director Administrativo de los Tribunales y del Juez Presidente. Las Reglas de Disciplina Judicial guardan silencio sobre qué ocurre cuando una parte está inconforme con la decisión del Juez Presidente. Entendemos que si le corresponde al Pleno de este Tribunal ejercer la potestad de destituir o no a un juez, no debe cuestionarse que también ostenta la autoridad para dilucidar si procede o no el archivo de una queja contra un miembro del Sistema Judicial. Ello, pues, como hemos expresado anteriormente:
En nuestra democracia, el Pueblo tiene derecho a pasar jui *307 ció fiscalizador sobre todas las acciones y determinaciones del Gobierno, incluyendo las de los tribunales. Debe poderse eva-luar la justeza no sólo de aquellos casos en que se encausa disciplinariamente a un juez, sino también de aquellos casos en que se exonera al juez antes de llegar a una determinación de causa probable. Esto es, el ciudadano debe poder examinar los méritos de la decisión de archivar una queja. (Enfasis suplido y en el original). Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 183 (2000).
A su vez, la revisión de los méritos de archivar una queja sirve como baluarte y fortalece la política pública de la Rama Judicial hacia la consecución de la máxima trans-parencia de sus procesos, accesibilidad, sensibilidad y com-promiso a la excelencia administrativa, y aumenta la con-fianza del Pueblo en nuestro Sistema Judicial. Véase Plan Estratégico de la Rama Judicial de Puerto Rico 2012-2015: Justicia y Servicio.
Ahora bien, la Regla 34 de Disciplina Judicial, 4 LPRA Ap. XV-B, permite a este Tribunal determinar el trámite de los asuntos no previstos por estas reglas, de tal forma que se “garantice el cumplimiento de los propósitos que inspiran estos procedimientos y los derechos de la jueza o del juez, de la parte promovente y la sana administración de la justicia”. (Énfasis suplido). Regla 34 de Disciplina Judicial, 4 LPRA Ap. XV-B.
Entendemos que el Pleno de este Tribunal debe revisar la determinación del Juez Presidente sobre el archivo de la queja presentada. Esta revisión no puede atenderse mediante una petición de certiorari pues, como bien señala la jueza Cancio González, ese recurso no es el apropiado porque este se emplea para revisar las determinaciones judiciales de tribunales inferiores. IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012); Pueblo v. Díaz De León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005). Sin embargo, ello no es óbice para que este Tribunal atienda el planteamiento ante nuestra consideración y lo acoja como un recurso de revisión, máxime cuando *308 se trata de un asunto de tal envergadura como la disciplina judicial. Por tal razón, entendemos que en estos casos la facultad de revisión es inherente a este Tribunal debido al poder esencial que posee esta Curia para disciplinar a los miembros del Sistema Judicial. Ese proceso de revisión debe ejercerse diligentemente, que permita al promovente cuestionar la determinación que el Juez Presidente realice confirmando el archivo de la queja presentada y, a su vez, que conceda al promovido la oportunidad de defenderse. Precisamos que tal revisión debe presentarse dentro de los diez días siguientes a la notificación de la decisión del Juez Presidente.(14) Si se sostiene la determinación de archivo de la queja contra el juez, la decisión advendrá final y firme, y la revisión formará parte del expediente de la queja desestimada, por lo que le aplicarán las disposiciones contenidas en la Regla 11 de Disciplina Judicial, 4 LPRA Ap. XV-B.(15)
Al así proceder, se ejerce la facultad constitucional que ostentan los miembros de este Tribunal en cuanto a si pro-cede o no la destitución de un juez. En la medida que se cuestione la decisión de archivar una queja contra un juez de nuestro sistema de justicia, resulta un deber inherente de todos los integrantes de esta Curia considerar el asunto presentado. Tal actuación afirma la confianza en los proce-sos de destitución aquí enmarcados.
III
Conforme con lo anterior, procedemos a evaluar la revi-sión presentada por los quejosos.
*309 Los quejosos aducen que, luego del mandato emitido por este Tribunal para permitir la presentación de una recon-vención por dolo contractual, la representación legal de la parte contraria argumentó que no procedía acatar el man-dato emitido por esta Curia. En ese sentido, la parte con-traria señaló al Tribunal de Primera Instancia que el asunto sobre la prescripción no estuvo ante la considera-ción de este Tribunal al emitir el mandato que da lugar a la controversia de autos. Los quejosos señalan que la jueza Cancio González debió acatar el mandato emitido. Advier-ten que ésta expresamente señaló lo siguiente:
Coincidimos con la posición de FirstBank a los efectos que el asunto de la prescripción de la causa de acción presentada en la Reconvención, no estaba propiamente planteada ante el Tribunal Supremo. Esto se manifiesta sin duda debido a que ni siquiera al momento en el que el caso fuera presentado ante el Tribunal Supremo, se había aceptado la radicación de la refe-rida Reconvención. Por tanto, dicho Tribunal no podía tener ante sí la controversia de si contra la misma procedía la de-fensa afirmativa de prescripción. En conclusión, lo manifes-tado por el Tribunal Supremo en cuanto a la prescripción no ha sentado precedente en este caso ya que no tuvo ante sí las controversias que se están resolviendo en esta Sentencia.(16)
Por lo tanto, los quejosos sostienen que no procede el archivo de la queja presentada porque la jueza Cancio González deliberadamente desacató el mandato de este Tribunal, máxime cuando las expresiones de este Tribunal establecieron que la fecha argüida por FirstBank no podía ser considerada para computar el término prescriptivo.
Por su parte, la jueza Cancio González destaca que mediante la queja disciplinaria interpuesta por los quejosos se pretende impugnar unas determinaciones judiciales que esta adjudicó. Sobre este particular, enfatiza que los que-josos cuestionan que no cumplió con el mandato del Tribunal Supremo, que denegó una solicitud de prórroga y que *310 impuso sanciones, descalificó a un bufete y permitió la re-presentación legal de los demandados.(17) Por lo tanto, sos-tiene que la queja no cumple con la Regla 3 de Disciplina Judicial, 4 LPRA Ap. XV-B. Indica que en esta ocasión solo aducen que no cumplió con el mandato de este Tribunal, por lo que estima que un caso aislado no constituye prueba clara, robusta y convincente para establecer la parcialidad de la jueza. De igual manera, la Oficina de Administración de los Tribunales sostiene que lo acaecido fue un error ju-rídico que no conlleva una acción disciplinaria.
IV
A. Al estudiar el expediente de autos surge con clari-dad que este Tribunal atendió la actuación del foro de ins-tancia de no autorizar la presentación de cierta reconven-ción por entender que resultaría en perjuicio indebido por dilación. El Tribunal de Apelaciones confirmó y esta Curia revocó (CC-2009-200) esa determinación del foro primario.(18) Al dilucidar la controversia, este Tribunal eva-luó distintos factores para auscultar si de presentarse la reconvención se causaría un perjuicio indebido a la parte. Para ello, determinamos que no se solicitó la presentación de la reconvención tardíamente, pues no se había comen-zado el descubrimiento de prueba y tampoco se había celebrado la vista con antelación al juicio. Por lo tanto, el caso no estaba en una etapa avanzada de los procedimientos. Igualmente, estimamos que la alegación que da lugar a la reconvención fue escuetamente señalada en las alegacio-nes responsivas originales, por lo que no validamos los ar-gumentos de mala fe traídos ante nuestra consideración. *311 Tampoco entendemos que presentar la reconvención oca-sione algún perjuicio indebido a FirstBank.
Atendimos el argumento de que no procedía la recon-vención omitida por estar prescrita la acción de impugna-ción del contrato por vicio en el consentimiento, ya que el término prescriptivo transcurrió. A estos efectos, determi-namos que la reclamación de dolo no es con relación al contrato principal sino al accesorio. Por esto la reclamación de dolo no es al momento de la contratación durante el 1999, sino posteriormente en la consumación del contrato en el 2004. A su vez, la acción se retrotrae a la fecha de la contestación original, por lo que la acción no estaba pres-crita al haberse ejercido oportunamente. Así, aceptamos la contestación enmendada a la demanda y la reconvención jurada. Devolvimos el caso al Tribunal de Primera Instan-cia para que continuaran los procedimientos conforme con lo resuelto.
A base de estas determinaciones, la jueza Cancio Gon-zález recibió la reconvención. No obstante, FirstBank soli-citó su desestimación a base de las alegaciones presenta-das en la reconvención y, en lo pertinente, levantó la defensa de prescripción. Los quejosos se opusieron. Al así hacerlo, sostuvieron que el término prescriptivo comenzó a transcurrir cuando FirstBank ejerció su derecho y no desde la firma del contrato. De igual forma, expusieron nuestros pronunciamientos en el caso CC-2009-200. Por su parte, FirstBank argumentó que la alegación de la reconvención es de dolo por consentimiento al firmar el contrato acceso-rio, por lo que sí estaba prescrita.
Al atender la moción de desestimación, la jueza Cancio González expresó que la controversia atendida por este Tribunal era a los efectos de si la reconvención debía ser permitida. La juzgadora entendió que, a base de las alega-ciones contenidas en la reconvención presentada, la causa de acción estaba prescrita. Recalcó que en esta se alegó vicio en el consentimiento en el origen del contrato y no en *312 la consumación. Por lo tanto, concluyó que el término pres-criptivo comenzó a transcurrir desde la firma del contrato.
El Tribunal de Apelaciones revisó tal actuación. Con-cluyó que este Tribunal determinó que la reconvención no estaba prescrita y que la jueza Cancio González resolvió contrario a nuestros pronunciamientos. Por lo tanto, re-vocó al foro primario por no observar el mandato de este Tribunal.
B. No debe existir duda en cuanto a que la corrección jurídica de una determinación es un asunto que debe revisarse mediante los recursos correspondientes. In re Hon. Díaz García, T.P.I., 158 DPR 549 (2003). De igual forma, los errores de derecho no constituyen un fundamento adecuado para disciplinar a un juez. In re Sierra Enriquez, 185 DPR 830, 849 (2012). Claro está, ello siempre y cuando el error no sea de tal naturaleza que pueda considerarse como una violación al Código de Etica Judicial y amerite la imposición de sanciones disciplinarias. In re Hon. Díaz García, T.P.I., supra, pág. 558. Es decir, solo cuando el error cometido constituya un abuso intencional de discreción o refleje una conducta impropia o de favoritismo del juzgador hacia una parte, es que procederá la correspondiente intervención de este Tribunal para imponer una sanción disciplinaria. Id., pág. 559. Véase, además, In re González Acevedo, 165 DPR 81, 95-96 (2005).
En lo pertinente, el mandato es el medio por el cual un tribunal de superior jerarquía notifica a uno de inferior jerarquía la sentencia objeto de revisión y ordena el cumplimiento con lo dispuesto. Véase I. Rivera García, Diccionario de términos jurídicos, 2da ed. rev., New Hampshire, Ed. Equity Publishing Corporation, 1985, pág. 162. Así, el tribunal inferior ejecuta la sentencia como fue emitida por el tribunal de superior jerarquía. Sin embargo, ello no vulnera la discreción del foro inferior para considerar asuntos que no fueron expresa o implícitamente decididos por el tribunal que emitió el mandato. Claro está, *313 ello no implica que los tribunales inferiores puedan actuar fuera de la orden dictada. Véase Mejías et al. v. Carrasquillo et al., 185 DPR 288, 300-303 (2012), citando a 18 Moore’s Federal Practice 3d Sec. 134.23(4), págs. 134-61 (2001).
C. Al examinar el expediente ante nuestra considera-ción concluimos que las actuaciones de la jueza Cancio González no constituyeron un abuso intencional de discre-ción y tampoco reflejan una conducta impropia o un favo-ritismo de su parte hacia algún litigante. En esencia, la jueza Cancio González permitió la presentación de la re-convención como surge del mandato emitido por este Tribunal. No obstante, ante una moción de desestimación contra la reconvención, y en aras de resolverla, la jueza Cancio González interpretó incorrectamente lo resuelto por este Tribunal. Ésta limitó el alcance de nuestras expresiones. Entendió que la reconvención presentada alegó solamente dolo en el origen de la contratación y no en el cumplimiento de la obligación. Al así actuar, erró al in-terpretar las expresiones de este Tribunal en el mandato emitido. Allí dispusimos que la reconvención se retrotrae a la fecha de la contestación original de la demanda y que el dolo se manifestó en el 2004, por lo que la reclamación de dolo no está prescrita.
La actuación de la jueza Cancio González no constituye evidencia suficiente que denote un abuso intencional de su discreción. Por lo tanto, concluimos que no procede un pro-cedimiento disciplinario en su contra.
V
Por las razones discutidas, confirmamos la determina-ción de archivar la queja presentada contra la Hon. Iris L. Cancio González. Se ordena el archivo definitivo de la queja.

Se dictará Sentencia de conformidad.

*314 El Juez Presidente Señor Hernández Denton se inhibió. La Jueza Asociada Señora Fiol Matta no interviene. La Juez Asociada Señor Rodríguez Rodríguez no intervino.

 Las determinaciones judiciales están relacionadas con el caso Civil Núm. KAC2005-8109 (908), FirstBank Puerto Rico v. Instituto de Banca y Comercio, Inc., et al., y el caso CC-2009-200 de este Tribunal.

 Sobre la determinación de la Hon. Iris L. Cancio González, los quejosos acudieron ante el Tribunal de Apelaciones (KLAN2012-0839). El foro intermedio revocó al Tribunal de Primera Instancia mediante la Sentencia de 30 de noviembre de 2012, *294 en la que concluyó que el Tribunal de Primera Instancia no cumplió a cabalidad con el mandato de este Tribunal. El foro intermedio razonó que el asunto de prescripción estuvo ante la consideración de este Tribunal Supremo cuando atendió la posibilidad de una presentación de reconvención. Por lo tanto, el foro intermedio determinó que no se podía interpretar que el tema de prescripción no había sido expresa o implíci-tamente atendido al emitir el mandato. Por el contrario, concluyó que quedó mani-fiestamente analizado y resuelto que la causa de acción expresada en las alegaciones de la reconvención no estaba prescrita.

 Ello debido a la inhibición del Juez Presidente Señor Hernández Denton.

 La Sec. 3 de la Ley Núm. 58 de 29 de abril de 1930 disponía que cualquiera de los jueces de distrito de la Isla a quien se le acusase de “haber incurrido en prevaricación, soborno, conducta inmoral, cualquier delito que implique depravación moral, negligencia inexcusable o ineptitud manifiesta para el desempeño de sus funciones, deberá ser destituido por el Gobernador de Puerto Rico a recomendación del Tribunal Supremo [...]”. 1930 Leyes de Puerto Rico 419.

 Para una discusión detallada sobre el alcance de la reforma judicial de 1952, véase Clark y Rogers, The New Judiciary Act Of Puerto Rico: A Definitive Court Reorganization, 61 Yale L.J. 1147 (1952).

 Véanse: Ley Núm. 107 de 8 de julio de 1960; Ley Núm. 31 de 11 de junio de 1962; Ley Núm. 2 de 22 de abril de 1966; Ley Núm. 201 de 23 de julio de 1974.

 Este Tribunal aclaró en In re Marín Báez, 81 DPR 274 (1959), que no transgrede el debido proceso de ley la participación inicial de un juez en una etapa inicial del procedimiento cuando ordena la investigación de los hechos, examina el informe correspondiente y ordena la formulación de una querella si considera que existe causa para procedimientos ulteriores. Ello, pues no todo contacto previo con la prueba incapacita a un juzgado para dirimir posteriormente los méritos de una controversia. Id., págs. 282-287.

 Se le reconocía al Juez Presidente la facultad de ordenar una investigación preliminar antes de someter el caso al Pleno.

 El oidor podía ser este Foro, un comisionado o una junta de dos o más comisionados designados por esta Curia.

 Si el oidor era este Tribunal, el informe consistía en la Resolución que se emitiera.

 Para el detalle de las recomendaciones propuestas, refiérase a Secretariado de la Conferencia Judicial, La Judicatura puertorriqueña, octubre de 1981, págs. 163-221.

 Un procedimiento similar se establece para los casos en las determinaciones de no causa al presentarse la querella. Véase Regla 16 de Disciplina Judicial, 4 LPRA Ap. XV-B.

 Véanse: Sec. 24 de la Ley Núm. 11 de 24 de julio de 1952 (4 LPRA ant. see. 232); Regla 13 del Reglamento del Tribunal Supremo aprobada el 23 de mayo de 1975 (4 LPRA ant. Ap. I-A); Reglas para el Trámite de Reunión Informal o de Separación del Servicio de Jueces, 4 LPRA ant. Ap. XV.

 A estos efectos, notamos que los términos de revisión de las determinaciones de los procesos disciplinarios son de 10 días. Véase Regla 8(d), 9(b) y 16(d) de Disciplina Judicial, 4 LPRA Ap. XV-B.

 Recordemos que tanto el informe de investigación como sus anejos están disponibles a escrutinio público desde que se notifica la determinación del Director Administrativo de archivar la queja. Véase Regla 10 de Disciplina Judicial, 4 LPRA Ap. XV-B; Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161 (2000).

 Sentencia Parcial del Tribunal de Primera Instancia, esc. 1, Apéndice del Eecurso de certiorari, pág. 142.

 De hecho, expone que los quejosos presentaron varios recursos de revisión ante el foro apelativo intermedio. En todos se confirmó a la jueza Cancio González, excepto en cuanto a que no siguió el mandato del Tribunal Supremo.

 Es importante resaltar que inicialmente el foro primario permitió la presentación de la reconvención, pero luego reconsideró esa decisión.